**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KELLI ANN MORNINGSTAR,** | : | **Civil No. 1:25-CV-1015** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Brann)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I. Introduction

It is well-settled that case law has long placed a duty of articulation upon Administrative Law Judges (ALJs) when deciding Social Security disability claims. Thus, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir.

1999). Further, when a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993).

We are reminded of these familiar paradigms in the instant case. The plaintiff, Kelli Morningstar, was an older worker in her fifties at the time of the alleged onset of her disability. Morningstar was a dedicated healthcare provider, with a lengthy work history prior to the onset of her physical impairments. In 2022, Morningstar was diagnosed with rectal cancer. Following several treatments regimens, she underwent colorectal surgery, a sigmoid resection and permanent colostomy on May 10, 2023. To her credit, Morningstar reported that she tried to return to work in the summer of 2022 while undergoing cancer treatment. However, she found that she could not meet the physical demands of the workplace due to pain and fatigue.

On these facts, five medical sources opined regarding the severity of Morningstar's impairments. Three of these medical sources actually treated Morningstar. These treating sources all opined that Morningstar was either disabled or severely limited in her ability to work. In contrast, two non-treating, non-examining state agency sources reached different conclusions regarding Morningstar's ability to work following her cancer surgery. One state agency

physician opined that she could perform light work; the other non-treating, non-examining source stated that she could work at a medium exertional level.

The ALJ's decision in this case rejected the treating source consensus and instead adopted the most extreme view stated by a non-examining source, finding that Morningstar could perform medium exertional despite her cancer surgery and permanent colostomy. As a result, the ALJ found that Morningstar could return to her prior work and denied her disability claim.

In reaching this conclusion, which was at odds with every treating source's assessment of Morningstar's impairments, the ALJ specifically rejected the opinion of Morningstar's treating physical therapist, stating:

> Lastly, the undersigned notes that the claimant's physical therapist, Paisha Glisson submitted a medical source statement indicating that the claimant could perform less than a sedentary range of work with significant sitting/standing/walking and postural restrictions (Exhibit 44F). The undersigned is unpersuaded and notes that a physical therapist is not an acceptable medical source and these opinions do not constitute medical opinions. Social security regulations indicate that only evidence from acceptable medical sources, such as medical doctors, osteopathic doctors, etc., can be used to establish the existence of an impairment.

(Tr. 59).

As discussed below, this aspect of the ALJ's reasoning is wrong. Under the Commissioner's regulations which have been in effect since March 2017,

Morningstar's treating physical therapist is a medical source who is entitled to render medical opinions which must be evaluated by the ALJ on its merits. Thus, in this case the ALJ rejected a treating source medical opinion for the wrong reason—erroneously concluding that the physical therapist was not a medical source whose professional judgment needed to be considered. This was error, and in the context of a case where all treating sources opined that Morningstar was severely limited in her ability to meet the physical demands of the workplace, discounting the treating source opinion of the professional who provided her physical therapy for the wrong reason cannot be deemed harmless. Since the ALJ discounted material evidence for the wrong reason, we recommend that this case be remanded to the Commissioner for further consideration and evaluation of the medical opinion evidence.

## II. <u>Statement of Facts and of the Case</u>

On August 17, 2022, Kelli Ann Morningstar filed an application for a period of disability and disability insurance benefits, pursuant to Title II of the Social Security Act, alleging disability beginning February 11, 2022. According to Morningstar she was totally disabled due to adenocarcinoma of the rectum, cancer which required colorectal surgery and left her with a permanent colostomy. Morningstar was born on July 10, 1970 and was 51 years old, which is defined as an individual closely approaching advanced age under the Commissioner's regulations,

on the alleged disability onset date. (Doc. 60). Notably, prior to the onset of her cancer, Morningstar had a robust work history in the healthcare field, having been continuously employed for nearly four decades, from 1986 until the onset of her cancer in 2022. (Tr. 233).

Following this March 2022 cancer diagnosis, (tr. 349-374), the clinical record reveals that Morningstar, who had prior adverse medical experiences, eschewed chemotherapy or x-rays and elected instead to employ an array of holistic treatments to combat her cancer. Morningstar received care from numerous treating sources, several of whom later opined regarding the severity of her impairments.

At the outset, beginning in March of 2022, Morningstar treated with a holistic medicine source, Robert Glantz, CRNP. Morningstar received direct care from CRNP Glantz throughout the Spring and Summer of 2022. (Tr. 54). Morningstar also continued to obtain treatment through CRNP Glantz following her colorectal surgery. (Tr. 56). Additionally, in the Fall of 2022, Morningstar received treatment from a chiropractor, Dr. Thomas Horn, for the persistent back and pelvic pain caused by her cancer. (Tr. 731-737).

While she pursued these treatment options, Morningstar—who had worked as an RN for thirty two years—made a commendable effort to return to work but was unable to meet the physical demands of the workplace. As Morningstar later

explained: "I tried to go back to work in the summer of 2022 and after ten days it got to be too much with the pain and trying to sit and I just couldn't." (Tr. 86).

Ultimately, in the May of 2023, Morningstar underwent colorectal surgery, a sigmoid resection and permanent colostomy on May 10, 2023. (Tr. 1177-1189). In the wake of this major surgery, Morningstar continued to receive care from a number of medical sources, including CRNP Glantz. (Tr. 56). She also engaged in lengthy physical therapy with a doctor of physical therapy, Paisha Glisson, DPT.

It was against the backdrop of this clinical record that five medical sources opined regarding the extent to which Morningstar's cancer-related impairments were disabling. Three of these medical sources actually treated Morningstar, and all of these treating sources agreed that she was severely impaired post operatively. Further, these treating source opinions all seemed to agree that she could not return to the physical demands of her past work.

At the outset, one of Morningstar's primary treating sources, CRNP Glantz, provided a November 9, 2022 letter which set forth the following detailed assessment of the plaintiff's limitations:

> Kelli cannot work due to the cancer causing pain and pressing on areas that make it difficult to sit and/or stand for long periods of time. The rectal cancer is in an area that prevent her from doing a job that could require prolonged sitting at a computer, heavy lifting or moving objects. She also cannot stand for long periods of time. She requires frequent

> rests and breaks that include changing positions to help the pain. The cancer also causes issues with her bowels and this requires her to stay close to bathrooms.

(Tr. 791).

CRNP Glantz's findings, in turn, were echoed by a second treating source, Dr. Thomas Horn, who also treated Morningstar in the Fall of 2022. On October 18, 2022, Dr. Horn explained that:

> Mrs. Morningstar was diagnosed in February 2022 with Stage IV rectal cancer which she is actively seeking treatment for. Her current low back and pelvic pain is associated with her rectal cancer and is complicated by degenerative changes already present in her lumbar spine. Mrs. Morningstar is unable to stand for more that 15-30 minutes before she has to lay down to rest, when completing even simple tasks at home. She is unable to sit for more than 30 minutes due to pelvic and lumbar spine pain. Mrs. Morningstar is unable to walk more than % mile before needing to rest, walking this distance would likely leave her exhausted for the remainder of that day. Mrs. Morningstar is able to handle only light (5-l0lbs.) objects when lifting and carrying but only on an infrequent basis. Pushing/pulling is markedly limited, 10 lbs. max. Manipulative or postural activities, such as reaching, handling, stopping or crouching are also markedly limited.

(Tr. 732).

Finally, in November of 2023, following Morningstar's colorectal cancer surgery, a third treating source, her physical therapist DPT Glisson, provided a medical source statement evaluating her ability to perform sustained labor. DPT Glisson found that Morningstar was extremely limited in her physical activities. She

could only occasionally lift or carry up to ten pounds and could never lift or carry greater weight; she could stand or walk for ten minutes at a time and for no more than one hour during a workday; and she could never stoop, kneel, crouch or crawl. (Tr. 1466-1471). DPT Glisson's medical opinion was particularly noteworthy in several respects. First, it was the most recent medical opinion offered by a treating source. Second, it provided a detailed description of Morningstar's post-operative limitations. Finally, in a case which involved an assessment of Morningstar's physical limitations, this opinion by her physical therapist was grounded in the observations of the medical source with the most direct, hands on experience with the plaintiff.

In contrast to this treating source consensus which clearly stated that Morningstar could not return to her past work, or any work, two state agency sources who never met, examined, or treated Morningstar also opined on her physical limitations. These non-examining source opinions, however, were inconsistent with each other and with the treating source consensus. Initially, a state agency obstetrician who never examined Morningstar, Dr. Catherine Smith, opined on January 26, 2023 that Morningstar could perform a limited range of light work. (Tr. 116-119). On reconsideration in July 2023, a second source who had never seen or treated, Dr. Henry Sovern, reached a conclusion which was even further removed

from the treating source consensus, and concluded that Morningstar could perform work at a medium exertional level. (Tr. 126-129).

It was against this medical backdrop that Morningstar's case was heard by an ALJ on March 12, 2024. (Tr. 80-109). At this hearing Morningstar and a Vocational Expert appeared and testified.[1] Following this hearing, on April 24, 2024, the ALJ issued an order denying this disability claim. (Tr. 43-68).

In this decision, the ALJ first found that Morningstar met the insured status requirements of the Social Security Act through December 31, 2027, and had not engaged in substantial gainful activity since February 11, 2022, her alleged onset date. (Tr. 48). At Step 2 the ALJ concluded that Morningstar's adenocarcinoma of the rectum was a severe impairment. (Tr. 49). However, the ALJ concluded at Step 3 that this condition did not meet any listing requirement. (Tr. 51).

Between Steps 3 and 4 the ALJ fashioned the following residual functional capacity (RFC) for Morningstar:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except could lift and carry 20 pounds frequently and 25 pounds occasionally; occasionally

[1] On appeal, plaintiff's counsel decried the conduct of this hearing alleging that the "ALJ went out of his to attack the Plaintiff" at the hearing. (Doc. 13 at 26). Given the nature of this allegation, we carefully reviewed the transcript of the hearing. It provides no support for this claim.

> climb ladders, ropes, or scaffolds; and limited to frequent crouching and crawling.

(Tr. 51-52).

This RFC embraced the most extreme medical opinion offered in this case, the non-treating, non-examining source opinion of Dr. Sovern, and rejected the medical opinion of every health care provider who actually examined and treated Morningstar. (Tr. 56-59). In particular, the ALJ was entirely dismissive of the opinion of DPT Glisson, summarily discounting that opinion, stating:

> Lastly, the undersigned notes that the claimant's physical therapist, Paisha Glisson submitted a medical source statement indicating that the claimant could perform less than a sedentary range of work with significant sitting/standing/walking and postural restrictions (Exhibit 44F). The undersigned is unpersuaded and notes that a physical therapist is not an acceptable medical source and these opinions do not constitute medical opinions. Social security regulations indicate that only evidence from acceptable medical sources, such as medical doctors, osteopathic doctors, etc., can be used to establish the existence of an impairment.

(Tr. 59).

Having completely discounted the opinion of the last medical professional to actually treat Morningstar without consideration of its merits because he did not deem it to constitute a medical opinion, the ALJ then found that Morningstar could perform her past relevant work as well as other jobs in the national economy and denied her claim. (Tr. 59-61).

This appeal followed. (Doc. 1). On appeal, among other issues, Morningstar argues that the ALJ committed reversible error in assessing the treating source opinions. While Morningstar's argument focuses primarily on the ALJ's consideration of CRNP Glantz's opinion, we find that the ALJ erred in a basic and fundamental way when he refused to even consider the informed judgment of DPT Glisson to be a medical opinion. As we discuss below, under the Commissioner's current regulations, DPT Glisson is undeniably a medical source whose medical opinion commands consideration on its merits. The ALJ's failure to recognize this fact is a material error and means that the ALJ's responsibility of adequately articulating the basis for a medical opinion evaluation has not been met in this case. Therefore, we recommend that the Court remand this case for further consideration and evaluation of the medical opinion evidence.

## III. Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record

> and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant

is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub

nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller, 962 F.Supp.2d

at 778–79 (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when

no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in

his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

Morningstar filed his disability application following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, the Commissioner's regulations governing analysis of medical opinions differed dramatically from the rules which apply today. First, those prior rules defined acceptable medical opinions narrowly in a fashion which was inconsistent with how health care was delivered throughout the United States. Under the pre-2017 rules: "Medical opinions [we]re statements from *acceptable medical source*s that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1)(emphasis added). An "acceptable medical source" in turn was largely limited to licensed physicians and osteopaths, a crabbed definition which excluded the informed judgment of a host of host of front line caregivers. See Hartranft v. Apfel, 181 F.3d 358, 361 (3d Cir. 1999). The pre-2017 regulations also created a hierarchy of medical source opinions with treating sources at the apex of

this hierarchy. Thus, the prior regulations "provide[d] special deference to medical opinions from treating sources who have 'seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment' ('treating source rule")'." Tilton v. Colvin, 184 F. Supp. 3d 135, 141 (M.D. Pa. 2016).

However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. At the outset, the range of opinions that ALJs were enjoined to consider were broadened substantially in a way which was congruent with how healthcare is actually delivered in this country. The current regulations, which have been in effect for the past nine years, eschew the notion of limiting opinions to "acceptable medical sources," licensed physicians, and instead provide that: "A medical opinion is a statement from *a medical sou*rce about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: (For claims filed (see § 404.614) before March 27, 2017, see § 404.1527(a) for the definition of medical opinion.)." 20 C.F.R. § 404.1513(a)(2) (emphasis added). Moreover, under the current, longstanding regulations: "Medical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law . . . . ." 20 C.F.R. § 404.1502

(d). Thus, the current regulations embrace and require ALJs to substantively assess medical opinions from any licensed caregiver, a reform which recognizes the vital role of nurses, counselors, therapists and other professionals in providing care in our healthcare system.

Finally, under the current regulations, the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court has aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).
>
> Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the

> foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.
>
> An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).
>
> Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well

established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions " the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

Finally, with respect to assessing competing medical opinion evidence, it is clear beyond peradventure that:

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. See Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir.1983).

Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

It is against these legal benchmarks that we assess the instant appeal.

**D. This Case Should Be Remanded.**

On appeal, Morningstar argues, *inter alia*, that the ALJ erred in the evaluation of the treating source consensus which found that the plaintiff was gravely impaired. While the primary thrust of the plaintiff's argument focuses on other aspects of this medical opinion analysis, we need not address these questions because it is apparent that the ALJ erred when he summarily discounted the most recent, and fully informed treating source medical opinion, the November 2023 opinion rendered by DPT Glisson.

The ALJ's stated rationale for completely rejecting this opinion without any substantive analysis was deeply flawed under the applicable rules prescribed by the Commissioner. On this score, the ALJ simply stated that:

> Lastly, the undersigned notes that the claimant's physical therapist, Paisha Glisson submitted a medical source statement indicating that the claimant could perform less than a sedentary range of work with significant sitting/standing/walking and postural restrictions (Exhibit

> 44F). The undersigned is unpersuaded and notes that a physical therapist is not an acceptable medical source and these opinions do not constitute medical opinions. Social security regulations indicate that only evidence from acceptable medical sources, such as medical doctors, osteopathic doctors, etc., can be used to establish the existence of an impairment.

(Tr. 59).

Thus, the lynchpin of the ALJ's analysis, and the justification for ignoring the substance of this treating source opinion, was the assertion that: "a physical therapist is not an acceptable medical source and these opinions do not constitute medical opinions." (Id.) While this contention may have had colorable merit ten years ago, it fundamentally misstates the principles which guide medical opinion analysis since 2017. See Casey G. H. v. Comm'r of Soc. Sec., No. 2:25-CV-583, 2026 WL 1377668, at *5 (S.D. Ohio May 18, 2026), report and recommendation adopted sub nom. Casey H. v. Comm'r of Soc. Sec., No. 2:25-CV-583, 2026 WL 1950608 (S.D. Ohio July 6, 2026) (remanding post-March 2017 case where ALJ erroneously implied that physical therapist was not an "acceptable medical source").

The current regulations call for substantive analysis of *all* medical opinions, and not merely those rendered by persons who are considered acceptable medical sources. See 20 C.F.R. § 404.1513(a)(2). Further, the current regulations specifically state that: "Medical source means an individual who is licensed as a healthcare

worker by a State and working within the scope of practice permitted under State or Federal law . . . . ." 20 C.F.R. § 404.1502 (d).

Under this definition, DPT Glisson is undeniably a "medical source" whose medical opinion must be addressed on its merits. Pennsylvania's Physical Therapy Practice Act, 63 Pa. Stat. Ann. § 1301 *et seq*., specifically imposes a licensing requirement on physical therapists, stating that: "It shall be unlawful for an individual to practice or hold himself out as being able to practice physical therapy in this State in any manner whatsoever unless such individual has met the educational requirements and is licensed in accordance with the provisions of this act." 63 Pa. Stat. Ann. § 1304. Therefore, it is clear beyond peradventure that DPT Glisson is "licensed as a healthcare worker by a State" who under the Commissioner's current regulations is entitled to render a medical opinion. Accordingly, the ALJ must address this opinion on its merits, and cannot avoid this task as he did by erroneously conflating the rules that applied in 2016 with those that have governed medical opinion evaluation since 2017.

Moreover, this error was potentially prejudicial in ways which compel a remand. In many ways DPT Glisson's November 2023 treating source opinion had the greatest provenance both in terms of the depth of the expert's hands-on experience with the plaintiff and timeliness, since it evaluated Morningstar's

capabilities post operatively. In contrast, Dr. Sovern's state agency opinion was both less timely and less informed since the state agency source had never met, examined or treated Morningstar. Yet, without any merits analysis, the ALJ chose this temporally remote and potentially less informed judgment based upon the mistaken application of a rule which had been abrogated nine years ago.

Simply put, the ALJ's failure to address the opinion of DPT Glisson on its merits was error and as we have noted in the past "the ALJ's complete failure to analyze, address or even acknowledge [a] treating source opinion which conflicted with the ALJ's residual functional capacity analysis, and recommended [a claimant] for 'full disability,' compels a remand . . . ." Harrison v. Berryhill, No. 3:17-CV-618, 2018 WL 2051691, at *5 (M.D. Pa. Apr. 17, 2018), report and recommendation adopted, No. 3:17CV0618, 2018 WL 2049924 (M.D. Pa. May 2, 2018). See e.g., Saltos v. O'Malley, No. 3:24-CV-006, 2024 WL 3794679, at *10 (M.D. Pa. Aug. 13, 2024); Seibert v. Saul, No. 1:18-CV-10, 2019 WL 4439653, at *7 (M.D. Pa. Aug. 28, 2019), report and recommendation adopted, No. 1:18-CV-10, 2019 WL 4420578 (M.D. Pa. Sept. 16, 2019).

Further, the potential prejudice flowing from this error is heightened in the instant case where two other treating sources had opined that Morningstar was disabled. Once DPT Glisson's opinion is considered on its merits, there is a

consistent consensus among all opining treating sources that Morningstar's cancer significantly diminished her ability to work. Since consistency is one of the hallmarks for evaluating the persuasiveness of medical opinions, the fact that every medical source found the plaintiff to be disabled is a material fact which has not been fully examined due to a legal error by the ALJ.

In sum, under the regulations governing evaluation of medical opinion evidence, more is needed by way of explanation in this case. Since the ALJ's burden of articulation is not met in the instant case, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this recommendation, we note that nothing in this Report and Recommendation should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.[2]

## IV. **Recommendation**

For the foregoing reasons, IT IS RECOMMENDED that the decision of the Commissioner in this case should be REMANDED for further consideration.

The parties are further placed on notice that pursuant to Local Rule 72.3:

[2] Further, since we have determined remand is necessary based upon this single issue, we do not address the plaintiff's remaining arguments but rather leave their determination for resolution on remand.

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of September 2026.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge